UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DOUGLAS E. DAYTON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-1781-SNLJ |
| | ) | |
| RICHARD LISENBEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants Richard Lisenbee and Matt Shults' motion for summary judgment. (#29). The motion is unopposed. For the reasons set forth, this Court will **GRANT** summary judgment in defendants' favor.

## I. BACKGROUND

What remains of plaintiff's case is a civil action under Section 1983 against Lisenbee and Shults in their individual capacities. All other claims have been dismissed. *See Dayton v. Lisenbee*, 2017 WL 345082 (E.D. Mo. Jan. 24, 2017).

At all times relevant to the complaint, plaintiff was detained at Phelps County jail. He complains that Lisenbee, sheriff of Phelps County, and Shults, a lieutenant at the Phelps County jail, violated his constitutional rights in what is essentially a myriad of conditions-of-confinement-type claims related to overcrowding. Plaintiff alleges, for example, that defendants provided him only one condiment packet for two sandwiches due to shortages, that the gym lacked exercise space, that there was no storage space in the containment areas, that he was forced to stand (or sit on the floor) while eating due to

1

overcrowding at the dining facility, that he was sometimes subjected to sleeping on the floor (with a thin mattress), and that only two toilets were available to over thirty-five inmates, which caused "pain and discomfort" to him at times while he waited for an unoccupied toilet. Plaintiff also complains that the jail does not offer religious services, thereby causing him to have 'no opportunities to practice free exercise of religion whatsoever."

The undisputed facts show that, despite these conditions, plaintiff never made any formal complaints and never requested to see the jail nurse while at the Phelps County jail. The only complaint on any subject utilizing the jail's grievance system was for "food being too greasy." During his deposition, plaintiff also asserted he had "back problems" while at the jail, which was allegedly diagnosed as arthritis after he departed, but there is no medical evidence in the record to support this claim and it is unclear how the above-referenced confinement conditions contributed to such an injury—if at all. Plaintiff states he did not seek medical assistance at the jail for his back injuries because "it was a $15.00 charge" to do so.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Courts repeatedly recognize that summary judgment is a harsh remedy that should be granted only when the moving party has established his or her right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing

courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the non-moving party must do more than show there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the non-moving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). And even when a motion for summary judgment stands unopposed, the motion is not automatically a winning one. "Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim."

*Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993).

**III. ANALYSIS**

Under the Fourteenth Amendment,[1] plaintiff's rights are said to be violated if the conditions of confinement amount to punishment. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010); *see also Hall v. Ramsey County*, 801 F.3d 912, 919 (8th Cir. 2015) (noting that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt"). Generally speaking, this means "a prisoner must demonstrate he has suffered atypical and significant hardship in relation to the ordinary incidents of prison life." *Ballinger v. Cedar County, Mo.*, 810 F.3d 557, 560 (8th Cir. 2016). More specifically, and "although the [Eighth Circuit] has yet to establish a clear standard for pretrial detainees" under the Fourteenth Amendment, the Eighth Circuit has routinely applied the "deliberate indifference" framework utilized in an Eighth Amendment analysis. *Morris*, 601 F.3d at 809.

The deliberate indifference standard has both an objective component ("was the deprivation sufficiently serious?") and a subjective component ("did the officials act with

---

[1] Defendants state that "whether [plaintiff's] status was that of a pretrial-detainee or a convicted inmate is unclear." This lack of clarity appears to derive from the uncertain scope of plaintiff's claims—further blurred by plaintiff's deposition in which he referenced filing an amended complaint to capture other periods of incarceration, though such an amendment never occurred. Defendants note, however, that Dayton expressly references the Fourteenth Amendment in his complaint, which pertains only to state pretrial detainees. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). In any event, regardless of plaintiff's particular status, "the Fourteenth Amendment gives state pretrial detainees … rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* (internal quotations omitted). Accordingly, the Court applies the Fourteenth Amendment framework to plaintiff's conditions-of-confinement claims, ensuring plaintiff is proved the full measure of constitutional protection.

a sufficiently culpable state of mind?"). *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994). The subject component inquires whether a defendant "knows of and disregards an excessive risk" to the detainee. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In essence, it supplies a minimum culpability threshold (something more than criticisms that the actor "should have perceived" the risk) and narrows liability to those actors of veritable blameworthiness (those with actual knowledge having, thus, a duty to prevent the excessive risk posed to the prisoner). *Id.*

The objective component, meanwhile, takes a dispassionate look at the reasonableness of a so-called deprivation—not every hardship suffered is an actionable injury. It requires, at minimum, that detainees be provided with the "minimal civilized measures of life's necessities." *Morris*, 601 F.3d at 809. For example, "detainees are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges." *Fant v. City of Ferguson*, 107 F.Supp.3d 1016, 1035 (E.D. Mo. 2015). But "conditions of confinement [will] only constitute cruel and unusual punishment [] when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* (*quoting Whitnack*, 16 F.3d at 957).

This search for an objectively identifiable deprivation is often imbued with elements of both temporality and severity. Indeed, a short-term deprivation—unless imminently affecting a detainee's safety, wellbeing, or dignity—is unlikely to be deemed objectively serious. *Compare Morris*, 601 F.3d at 810 (transporting detainee in a small dog cage for a ninety-minute car ride, with no compelling governmental purpose for doing so, that was "littered with dog hair, excrement, and dried urine" sufficiently

5

violated detainee's dignity and humanity as to be a constitutional violation); *with Smith v. Copeland*, 87 F.3d 265, 268-269 (8th Cir. 1996) (no constitutional violation where detainee was subjected to overflowing toilet for four days). Equally, deprivations that represent mere annoyances or the dissatisfaction of personal preferences, as opposed to deprivations that outright withhold or otherwise interrupt the satisfaction of basic needs, are likewise insufficient to be deemed objectively serious. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 541 (1979) (the practice of housing two detainees in small rooms intended for single occupancy for sleeping purposes did not amount to punishment and did not violate detainee's due process rights); *Stickley v. Byrd*, 703 F.3d 421, 423-424 (8th Cir. 2013) (denial of detainee's request for additional toilet paper was not a constitutional violation because "[w]hen he did run out of toilet paper, he was able to clean himself by taking a shower"); *Cosby v. Purkett*, 782 F.Supp. 1324, 1329 (E.D. Mo. 1992) (serving of cold food to prisoners did not state cognizable claim so long as prisoners were adequately fed and sanitation precautions were observed).

Here, without the benefit of having a response from plaintiff to defendants' motion, it is difficult to surmise how plaintiff's claims rise to the level of an objectively serious deprivation. See *Liberty Lobby, Inc.*, 477 U.S. at 249 (holding an adverse party, when confronted with a well-supported motion for summary judgment, must set forth specific facts that would help determine the need for a trial on the issues). It is true this Court must construe the facts in a light most favorable to plaintiff as the non-movant. *See Buechler*, 706 F.2d at 846. It is also true, however, that this Court is to refrain from acting as an advocate to either party and, as such, is under no compulsion to invent theories of

liability on plaintiff's behalf or contort otherwise terse facts to identify inferences that simply cannot be reasonably or logically drawn. *See Favaloro v. BJC Healthcare*, 2015 WL 1603054 at *3 (E.D. Mo. Apr. 9, 2015).

The undisputed facts, no matter how construed, simply do not rise to the level of a constitutional violation. Indeed, the Fourteenth amendment requires the conditions of the Phelps County Jail to create an "atypical and significant hardship," *Ballinger.*, 810 F.3d at 560, a hardship so atypical and so significant as to produce a deprivation of an "identifiable human need." *Whitnack*, 16 F.3d at 957. There must be a genuine deprivation of the "minimal civilized measures of life's necessities." *Morris*, 601 F.3d at 809.

Under such a rubric, the facts, at best, merely demonstrate plaintiff's personal annoyances with the perceived overcrowding of the Phelps County jail. As mentioned, plaintiff is dissatisfied that he received only a single condiment packet for his two sandwiches, he is displeased with the crowdedness of the gym and dining facilities (that required him to eat standing up), and he was discomforted by the fact that he had to wait to use the restroom and showers—testifying, however, that both were accessible to him at any point in the day, though he wasn't willing to "stay up all night" to use either. Many, if not all, of these hardships are faced daily by the common populace and certainly do not rise to the level of an atypical and significant hardship without more.

And that is the fatal flaw in plaintiff's case, which perhaps could have been addressed if he had chosen to file a response. Plaintiff says nothing about how these circumstances traversed from personal annoyance to objective deprivation. This is not the

7

case of over-crowdedness leading a detainee to being fed no food, too little food, or poorly prepared food (the Court sees no link between over-crowdedness and being served greasy food), there are no allegations that plaintiff was totally unable to work out due to an over-crowded gym, and there is no explanation why standing to eat a meal or being forced to hold one's bladder for a short time was genuinely depriving. *See Kane v. Jacobsen*, 2018 WL 704995 at *2 (E.D. Mo. Feb. 5, 2018) ("Overcrowding alone does not describe a constitutional violation. Overcrowding that leads to increased danger, poor supervision, safety, medical care and food preparation, however, can[.]" (internal citations omitted)). Other cases have shown that actual deprivation of human needs, albeit for brief periods, do not rise to the level of a constitutional violation. *See Williams v. Delo*, 49 F. 3d 442, 444-447 (8th Cir. 1995) (prisoner's deprivation of clothing, running water, hygiene supplies, blankets, and mattress for four days did not violate prisoner's constitutional rights). This Court is hard pressed, then, to conclude a constitutional deprivation might genuinely exist here when there is no indication that plaintiff was actually denied any basic necessities such as food, water, clothing, bedding, and hygiene supplies or that over-crowdedness otherwise contributed to some sort of definable injury.

    The undisputed facts also show that "during [plaintiff's] incarceration at the Phelps County Jail, he never made any complaints or requests to see the jail nurse," beyond a single complaint of the food being too greasy. Having never complained to prison officials, there are simply no facts construable in plaintiff's favor to suggest either defendant knew or had reason to know of any of the alleged instances of deprivation. Therefore, plaintiff has not sufficiently presented a genuine issue of fact related to the

subjective component of the deliberate indifference standard: that defendants "personally knew" of the constitutional deprivations being suffered by plaintiff, which they consciously disregarded. *See Walton*, 752 F.3d at 1118; *see also Farmer v. Brennan*, 511 U.S. 825, 838-839 (1994). And there is, likewise, no evidence of "very obvious and blatant circumstances" of the sort to suggest defendants knew of plaintiff's alleged deprivations notwithstanding his lack of complaints. *Simmons v. Cook*, 154 F.3d 805, 808 (8th Cir. 1998). Plaintiff does nothing, for example, to show a widespread, systemic failure of conditions or conditions so clearly lacking as to be "apparent to any layperson." *Id*. Rather, his complaint sounds primarily in dissatisfactions born from his own idiosyncrasies involving an annoyance with prison overcrowding generally. This does not suffice to state a constitutional claim. *See Kane*, 2018 WL 704995 at *2.

That leaves plaintiff's complaint about the complete lack of religious services. Plaintiff does not appear to complain that he is being thwarted in his attempt to practice his religion—there is no indication that defendants have denied a requested accommodation, access to materials, or the like. Rather, plaintiff complains that defendants have not, themselves, provided religious services to detainees generally. The rule has long been stated that officials must afford "reasonable opportunities … to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). But this Court is aware of no authority construing the mandate of providing "reasonable opportunities" to mean that the jail, itself, must create or otherwise establish religious services on prisoners' behalf. And, again, in the absence of any evidence of a formal

demand for particular religious services (or an argument that organized group services are the only meaningful method of practicing plaintiff's religion), it cannot be said that defendants abdicated any constitutional duty to create such services. *See Hutchings v. Corum*, 501 F.Supp. 1276, 1300 (W.D. Mo. 1980).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#29) is **GRANTED**. Judgment to follow this Order.

So ordered this 11th day of January 2019.

                                                            _____
                                                            STEPHEN N. LIMBAUGH, JR.
                                                            UNITED STATES DISTRICT JUDGE